## 10056

### JEFFCOAT *ET AL.* v. WINGARD *ET AL.*

#### (96 S. E. 908.)

1. Mortgages — Absolute — Parol Evidence.—A deed absolute in form can be shown by parol to have been intended as a mortgage.

2. Mortgages — Absolute Deed. — Proof that an absolute deed was intended as a mortgage must be clear and convincing.

3. Mortgages—Absolute Deeds—Evidence. — Evidence *held* insufficient to sustain a finding that a deed absolute in form was intended as a mortgage.

4. Life Estates — Running of Statute — Adverse Possession.—Where children lived on land under their mother's reservation of a life estate, limitations did not begin to run in their favor against the remainderman until the expiration of such life estate.

Before Moore, J., Lexington, Spring term, 1916. Reversed and complaint dismissed.

Action by John Jeffcoat and others against Maria A. M. Wingard and others. Decree for plaintiffs, and defendants appeal.

*Messrs. Thurmond, Callison & Timmerman,* for appellants, submit: *The deed from Jeffcoat to Wingard, dated 28th October, 1889, was not a mortgage, but a fee simple deed:* 103 S. C. 233; 70 Ill. 457; 20 Fed. Cases No. 11, 801; 27 Cyc. 993-4. *Respondents were not entitled to a trial by jury:* 48 S. C. 175; 53 S. E. 795. *Respondents not entitled to specific performance:* 53 S. E. 795, 799; Blackstone's Com., vol. II, p. 917; 70 Am. St. Rep. (Va.) 834; 19 S. C. 170; 53 S. E. 798; 76 S. C. 170-1; Rich. Eq. 40; 53 S. C. 126; 96 S. C. 24; 108 U. S. 342; 36 Cyc. 727; 36 Cyc. 721-8; 7 Rich. Eq. 260; Bailey's Eq. 371; 53 S. C. 574-5; 15 S. C. 124; 53 S. C. 572; sec. 438 New Code of Procedure, sec 400 Old Code; 92 S. C. 501; 53 S. C. 563. *The deed from Jeffcoat to Wingard is what it purports to be:* 54 S. C. 191; 92 S. C. 111. *The Court will not declare a deed absolute on its face to be a mortgage unless there is clear and convincing evidence that it was the intention of the parties*

*when executed it was so intended:* 103 S. C. 256. *If deed from Jeffcoat to Wingard was a mortgage, clearly the parties interested, afterwards agreed for it to lose its character as an equitable mortgage and for it to be what it purported to be, to wit, an unconditional conveyance:* 27 Cyc. 1031; 70 Ill. 457; 20 Fed. Cases No. 11, 801; 92 S. C. 501. *Treating and considering this case under the complaint as one to redeem was clearly erroneous, as the same was not within the scope and object of the action:* Pomeroy on Remedies, sec. 453.

*Messrs. John T. Seibels* and *C. M. Efird,* for respondents, submit: *In a law case the findings of a Circuit Judge are not reviewable by this Court:* 90 S. C. 186; 101 S. C. 140. *In equity cases, it is incumbent on the appellant to satisfy this Court by the preponderance of the evidence that the presiding Judge erred in his findings of fact:* 92 S. C. 511; 90 S. C. 473; 105 S. C. 12; 105 S. C. 60. *The deed from Jeffcoat to Wingard and the agreement to reconvey from Wingard to Jeffcoat were simultaneously delivered and together constitute a mortgage:* A. & E. Ann. Cases, vol. XI, p. 311; 58 S. C. 54; 70 S. C. 114; — S. C. 392; 7 McMullen's Eq. 1; 78 S. C. 182; Pomeroy, sec. 1196, p. 2379; Pomeroy's Eq. Juris., vol. CXI, sec. 1194; 78 S. C. 192. *Being a mortgage, it can be enforced or redeemed at any time within twenty years from maturity:* 92 S. C. 514; 92 S. C. 512, 513; 99 S. C. 35-36-37 and 65; Pomeroy's Eq. Juris., vol. CXI, sec. 1194. *This action having been brought in 1914, is not barred by statute, and the heirs of the mortgagor are entitled to redeem:* Code of Procedure, sec. 136, subd. 2. *Respondents are not estopped by lapse of time or delay in asserting this deed to be a mortgage, nor does the stipulation in the agreement for payment within five years prevent them from now showing that the transaction was a mortgage and not a conveyance:* 92 S. C. 513; McMullen Eq., vol. I, p. 13; 92 S. C. 514; 99 S. E. 36; Jones on Mortgages, sec. 244. *The complaint in this case contained all*

*the necessary allegations:* 54 S. C. 191. A question not made or argued in the Circuit Court will not be heard for the first time in this Court.

July 22, 1918.

The opinion of the Court was delivered by Mr. JUSTICE FRASER.

Daniel J. Jeffcoat owned a tract of land in Lexington county. He was in debt, and a judgment was obtained against him. He appealed to Mr. S. P. Wingard to assist him. On the 29th of October, 1889, Mr. Jeffcoat made a conveyance of 420 acres of land to Mr. Wingard, absolute in form for a stated consideration of $450. This deed was not recorded until the 27th day of May, 1890. Mr. Jeffcoat had several children (13 in number). On the day of the record of the deed, Mr. Wingard gave to John, Frank and Charles Jeffcoat, three of the children of Daniel J. Jeffcoat, an agreement of which the following is a copy:

"The State of South Carolina, County of Lexington. I, S. P. Wingard, of Lexington county and the State aforesaid, do hereby bind myself, my heirs, executor and administrator, to make or execute a deed or title to four hundred and twenty acres, more or less, situate in said county and State, whereon Daniel J. Jeffcoat now resides, to the sons of the said Daniel J., viz., John, Frank. and Charlie Jeffcoat, when the said John, Frank and Charlie have paid to me, the said S. P. Wingard, my heirs or assigns, the amount of a judgment and note, which I hold against the said Daniel J. Jeffcoat and any other expenses which I, the said S. P. Wingard, may have to pay on account of the said tract of land. After the above named amounts, with the interest on them at the rate of seven per cent. per annum have been paid by the said John, Frank and Charlie, to the said S. P. Wingard, his heirs or assigns, say within five years from this date. Then I, the said S. P. Wingard, do hereby bind myself, my executors and administrators, to execute a title for said tract of

land to the said John, Frank and Charlie Jeffcoat.    In testimony whereof, I have this the 27th day of May, A. D. 1890, subscribed my name and affixed my seal, in the presence of these witnesses.    S. P. Wingard.  (L. S.)    Jas. J. Wingard, Mary C. Wingard."

Daniel remained on the land, but on what conditions does not appear.    Some time thereafter, Daniel died.   His widow had not renounced her dower, and after her husband's death she made a deed to Mr. Wingard of all her interest, including her dower in the land previously conveyed to Mr. Wingard by her husband.   In her deed Mrs. Jeffcoat reserved a life estate in as much of the land as she desired to use during her life.   Some of the parties to the option agreement remained on the land with their mother, and it is quite clear that the use was under the reservation contained in the deed of Mrs. Jeffcoat to Mr. Wingard.    Mr. Wingard died, and so did Mrs. Jeffcoat.    Possession was demanded by the representatives of Mr. Wingard, and this suit was brought for specific performance under the agreement to reconvey.    The complaint alleged that the deed of Daniel J. Jeffcoat to S. P. Wingard was intended as a security for a debt, and, therefore, a mortgage.    Charles Jeffcoat died leaving children. John, Frank and the children of Charles brought this action, demanding specific performance of the agreement to reconvey.    The case was tried in the Court of Common Pleas for Lexington county.    The presiding Judge held that the deed from Dainel J. Jeffcoat to S. P. Wingard was a mortgage, but refused to grant specific performance, and held that the deed from Daniel J. Jeffcoat to S. P. Wingard was a mortgage, and that the plaintiffs were entitled to relief, not as granted under the option, but as heirs at law of Daniel J. Jeffcoat.    He held that there were other heirs at law of Daniel J. Jeffcoat.    He ordered the other heirs to be made parties, and the usual provisions for the enforcement of the mortgage.    From this judgment the defendants appealed. As this Court sees it, there is but one question in the case:

Was the deed from Daniel J. Jeffcoat to S. P. Wingard a mortgage?

We have been referred to many authorities, but it is not necessary to cite any of them. The principles that govern this case are clear, simple and universally recognized; a deed absolute in form can be shown even by parol to have been intended as a mortgage, but the proof must be clear and convincing. The only thing in this case on which any reliance can be had is "the agreement to reconvey." The enforcement of the "agreement to reconvey" has been refused.

The decree states:

"In this connection it should properly be stated that the plaintiffs concede that, if the deed has not been shown to have been intended as a mortgage, no relief can be awarded them under the agreement to reconvey, considered merely as an option to purchase the lands, and the plaintiffs in open Court admit that this is true, for the reason that there has been no compliance with the terms of the option or tender of performance thereof."

The rule is sometimes stated to be that, if the conveyance and agreement to reconvey leaves the parties still occupying the position of debtor and creditor, then the conveyance and agreement to reconvey may be construed together to constitute a mortgage. If the agreement to reconvey had been given to Daniel J. Jeffcoat, the debtor, there would be much force in the position. That is not the case here. The agreement to reconvey was given to John, Frank and Charles Jeffcoat, and between these parties and Mr. Wingard there is no evidence that the relation of debtor and creditor existed at any time. It is said that we may assume that the agreement to reconvey was taken by the sons at the request of the father. There must be proof of facts, and not an assumption of facts, to defeat the expressed statement of a solemn deed. There is not a word of proof that Daniel J. Jeffcoat had anything to do with the "agreement

to reconvey." Indeed, the "agreement to reconvey" oper-
ates the other way. Mr. Wingard could have made a bind-
ing agreement to convey to John, Frank and Charles only on
the theory that he (Wingard) was the owner. The deed
Mr. Wingard took from Mrs. Jeffcoat is a reasonable trans-
action, only on the theory that Mr. Wingard and Mrs. Jeff-
coat regarded the deed from Daniel as a deed and not a mort-
gage, and Mr. Wingard was seeking to perfect his title.
There is evidence, and it is conclusive to this Court, that the
sons who remained with their mother based their rights in
the land on the reserved life estate of their mother, and it
was not until after their mother's death and they were noti-
fied to give possession that they set up any individual claim
in the land. Even at the time of the commencement of this
action they relied upon the agreement to reconvey and asked
for specific performance and a conveyance to themselves and
the offer now to divide comes rather late.

Something is said about the statute of limitations. The
plaintiffs were on the land claiming under their
mother's reservation of a life estate. The statute
did not begin to run until the expiration of that life
estate.

The judgment is reversed, and the complaint dismissed.